UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                           Case No.   3:22-cr-113-MMH-JBT

KEVIN EDWARD HARGRAVE

## O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion to Withdraw Plea Agreement (Doc. 46; Motion), filed on April 22, 2023. The government filed a response in opposition to the Motion on May 3, 2023. See United States' Memorandum of Law in Opposition to Defendant's Motion to Withdraw Guilty Plea (Doc. 47; Response). With leave of Court, Defendant filed a reply in support of the Motion on May 19, 2023. See Reply to Response to Motion to Withdraw Plea (Doc. 51; Reply). On May 23, 2023, the Court held a hearing on the Motion. See Minute Entry (Doc. 52; May Hearing). Based on the discussions at the May Hearing, the Court provided Defendant with an opportunity to reconsider whether he wished to proceed with the Motion. See id. On May 31, 2023, Defendant filed a notice advising the Court that he intends to pursue the Motion. See Notice of Intent to Proceed with Request to Withdraw Plea (Doc. 53). Accordingly, this matter is ripe for resolution.

## I. Background

On September 6, 2022, the United States charged Defendant Kevin Edward Hargrave by means of an Information (Doc. 1) with one count of conspiracy. The objects of the charged conspiracy were to defraud the United States by impeding the Internal Revenue Service's collection of federal income taxes, and to commit wire fraud through a scheme to trick consumers into paying for worthless "credit repair" services. At his initial appearance on September 21, 2022, Hargrave appeared with retained counsel and asked for a continuance, which the Court granted. See Minute Entry (Doc. 10). Hargrave next appeared in court, with counsel, on October 4, 2022. See Minute Entry (Doc. 15; Plea Hearing). At that time, after being placed under oath, Hargrave waived his right to an indictment and entered a guilty plea to Count One of the Information pursuant to a written plea agreement. See id.; see also Waiver of Indictment (Doc. 16); Plea Agreement (Doc. 18).

As relevant to the instant Motion, the Plea Agreement provides that Hargrave will enter a plea of guilty to the conspiracy charge in the Information and specifies the maximum penalties for that offense, including "a term of imprisonment of not more than five years . . . ." See Plea Agreement at 1. In the Plea Agreement, Hargrave agreed

> to make full restitution in amounts determined by the Court to (i) the Internal Revenue Service for tax loss engendered by the conduct alleged in Count One of the Information and (ii) all

> individuals who paid for the credit repair services described in [the] Factual Basis provided below for their losses engendered by the conduct alleged in Count One of the Information.

<u>Id.</u> at 4. The Plea Agreement also contains an asset forfeiture provision which specifies that Hargrave will forfeit "the $1,500,000 in proceeds the defendant admits he obtained as the result of the commission of the offense to which the defendant is pleading guilty." <u>See id.</u> at 5.

Pursuant to the terms of the Plea Agreement, Hargrave agreed that he "is pleading guilty because [he] is in fact guilty," and he certified that "the facts set forth in the attached 'Factual Basis,' . . . are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt." <u>Id.</u> at 14. Significantly, the Factual Basis states in pertinent part that Hargrave "charged his customers between $500 and $1,000 for his supposed credit repair services through either an up-front fee plan or installment plan." <u>Id.</u> at 12. In addition, according to the Factual Basis, "the parties estimate that since 2015, as a result of the defendant's unlawful fraudulent conduct, his credit repair business customers bore reasonably foreseeable pecuniary harm of more than $1,500,000, but less than $3,500,000." <u>See id.</u> at 12. Additionally, the Factual Basis provides that "[a]n analysis of bank records establishes that . . . more than $8 million in deposits have been made into the business bank accounts controlled by the defendant . . . ." <u>Id.</u>

At the Plea Hearing, prior to taking Hargrave's plea, the Magistrate Judge addressed some of the terms of the Plea Agreement with Hargrave. Notably, the Magistrate Judge highlighted the maximum penalties set out in the Plea Agreement and Hargrave affirmed, while under oath, that he understood the penalties he faces. <u>See</u> Transcript of Digitally Recorded Initial Appearance/Waiver of Indictment/Plea/Bond (Doc. 38; Tr.) at 7-8. Hargrave also affirmed his understanding that the imposition of the maximum penalties was "a possible consequence of [his] guilty plea[.]" <u>Id.</u> at 18. In addition, the Magistrate Judge explained that the federal sentencing guidelines applied to Hargrave's case, and Hargrave affirmed that he had discussed the guidelines with his attorney. <u>Id.</u> at 15. Hargrave acknowledged that he understood that "the guidelines are only advisory, and the district judge can impose any sentence up to and including the maximum permitted by law." <u>Id.</u> at 16. Hargrave also responded in the affirmative when the Magistrate Judge asked if he understood that "[t]he sentence imposed could be different than any estimated sentence your attorney or anyone else has given you. It could be more severe than you expect. But even if that happens, you'll still be bound by your guilty plea and will not have a right to withdraw it." <u>Id.</u>

At the Magistrate Judge's request, Hargrave reviewed the Plea Agreement and acknowledged his signature on the signature page and his initials on every page. <u>See id.</u> at 19. He affirmed that he had read the entire

Plea Agreement and reviewed it with his attorney, that he understood the entire Plea Agreement, and that he did not have any questions about the Plea Agreement. Id. at 20. Significantly, the Magistrate Judge pointed out the provisions in which Hargrave agreed to provide full restitution to any victims, and to forfeit certain assets to the government and Hargrave affirmed his understanding of those provisions. Id. at 22. The Magistrate Judge specifically asked Hargrave if he understood that he was agreeing to forfeit certain assets to the government including "one and a half million dollars that you're admitting you obtained as a result of the commission of the offense," and Hargrave responded, "Yes, sir." Id.

Following this thorough review of the Plea Agreement, Hargrave stated his willingness to be bound by the provisions of the Plea Agreement and entered a plea of guilty to Count One of the Information. Id. at 24. Hargrave responded in the affirmative when asked if he was "pleading guilty because you are guilty," and he admitted that he committed the acts set forth in the charge. Id. Hargrave affirmed that he had read the Factual Basis to the Plea Agreement, responded "Yes, sir" when asked if that is what he did, and admitted that the Factual Basis and all the elements thereof "are true and correct as they pertain to [him.]" Id. at 25.

At the conclusion of the Plea Hearing, the Magistrate Judge entered a report and recommendation in which he stated that:

> After cautioning and examining the Defendant under oath concerning each of the subjects mentioned in Rule 11, I determined that the guilty plea was knowing and voluntary, and that the offense charged is supported by an independent basis in fact containing each of the essential elements of such offense. I therefore recommend that the plea of guilty be accepted and that the Defendant be adjudged guilty and have sentence imposed accordingly.

Report and Recommendation (Doc. 23). The parties waived the fourteen-day objection period and on October 11, 2022, the Court entered an Order accepting Hargrave's plea of guilty to Count One of the Information and adjudicating him guilty of that offense. See Acceptance of Plea of Guilty, Adjudication of Guilt, and Notice of Sentencing (Doc. 26).

On December 29, 2022, a United States Probation Officer filed an Initial Presentence Investigation Report (Doc. 32; Initial PSR) as to Hargrave. In the Initial PSR, the Probation Officer calculated the loss amount for purposes of § 2B1.1 of the United States Sentencing Guidelines as "more than $1,500,000, but less than $3,500,000," which is consistent with Hargrave's admissions in the Factual Basis regarding the pecuniary harm born by his customers. See Initial PSR at 11, 15.[1] Hargrave filed objections to the Initial PSR on March

---

[1] The applicable provision of the U.S. Sentencing Guidelines Manual, § 2B1.1, provides escalating enhancements to a defendant's offense level depending on the loss amount, starting with a two-level enhancement for losses greater than $6,500 (but less than or equal to $15,000) and ending with a 30-level enhancement for losses greater than $550 million. See U.S. Sent'g Guidelines Manual § 2B1.1(b)(1). The Probation Officer applied a 16-level enhancement based on a loss amount greater than $1.5 million but less than $3.5 million. See Initial PSR at 15; U.S. Sent'g Guidelines Manual § 2B1.1(b)(1)(I).

1, 2023. See Defendant's Objections to Presentence Investigation Report (Doc. 39; Objections). As relevant here, Hargrave objected to the Probation Officer's loss estimates because "[t]hose numbers are unreasonably determined under commentary to §2B1.1 definition of intended loss, not substantiated actual loss, contrary to the Eleventh Circuit's most recent binding precedent." See Objections at 2.[2] He maintains that "it is patently clear that this paragraph includes amounts of 'intended loss,' as opposed to 'actual loss,' . . . ." Id. at 5. On March 23, 2023, the Probation Officer issued the Final Presentence Investigation Report (Doc. 40; Final PSR) in which he keeps the same loss calculation and explains that "[t]he loss in this case is calculated as actual loss rather than an expanded intended loss methodology . . . ." See Final PSR at 11, 15, Addendum at 1-2. Following this determination, and only a month before his sentencing hearing, Hargrave filed the instant Motion.

## II. Summary of the Arguments

In the Motion, Hargrave argues that the Court should permit him to withdraw his plea because a "change of law regarding the appropriate determination of loss amount for sentencing calculation," which occurred after

---

[2] Application note 3 of the commentary to § 2B1.1 defines loss for purposes of this subsection as "the greater of actual loss or intended loss." See U.S. Sent'g Guidelines Manual § 2B1.1, cmt. n.3(A). "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense." Id., cmt. n.3(A)(i). "Intended loss" is (I) "the pecuniary harm that the defendant purposely sought to inflict; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur . . . ." Id., cmt. n.3(A)(ii).

he entered his plea, "inherently bears on his willfulness and voluntariness of the plea." See Motion at 2. The "change of law" to which Hargrave refers is the Eleventh Circuit Court of Appeal's en banc decision in United States v. Dupree, 57 F.4th 1269 (11th Cir. 2023). In Dupree, the Eleventh Circuit held that deference to the Sentencing Commission's commentary is appropriate only where the provision of the United States Sentencing Guidelines at issue is ambiguous. See Dupree, 57 F.4th at 1276, 1279. Although Dupree concerned a different section of the Sentencing Guidelines,[3] Hargrave relies on its holding to challenge the definition of loss for purposes of § 2B1.1. Specifically, Hargrave challenges application note 3 which defines loss as "the greater of actual loss or intended loss." See U.S. Sent'g Guidelines Manual § 2B1.1(b), cmt. n.3. According to Hargrave, this note "impermissibly expands the definition of 'loss' to include both intended loss and actual loss . . . ." See Motion at 2. As such, based on the principles set forth in Dupree, Hargrave maintains that the commentary's definition of loss no longer applies and only "actual loss" may be counted for purposes of § 2B1.1.

According to Hargrave, this purported change in the law is relevant to his plea because he "entered into the plea with reliance of [sic] the law at the time,

---

[3] See Dupree, 57 F.4th at 1271 ("This appeal requires us to consider whether an inchoate offense qualifies as a 'controlled substance offense' for purposes of the career offender sentencing enhancement under the United States Sentencing Guidelines." (citing U.S. Sent'g Guidelines Manual § 4B1.2(b))).

not with any understanding of the new applicable law" and as such "there is a substantial and significant question as to whether he would have knowingly and voluntarily entered into the guilty plea." See Motion at 2-3. Although not clearly explained, Hargrave appears to contend that he would not have entered the plea had he known of the upcoming change in the law because the stipulated loss amount in the Plea Agreement is premised on a loss calculation which, according to him, includes intended loss. See Reply at 1.[4] Hargrave also appears to take the position that he entered into the Plea Agreement based on the government's representation that it would otherwise prosecute him for fraud losses over $9.5 million, a number which Hargrave contends includes "intended loss." See Reply at 2.[5] At the May Hearing, defense counsel

---

[4] Significantly, Hargrave admitted in the Factual Basis that "his credit repair business customers bore reasonably foreseeable pecuniary harm of more than $1,500,000, but less than $3,500,000." See Factual Basis at 12 (emphasis added). As such, the Court has significant doubts regarding Hargrave's contention that the loss amount in the Plea Agreement includes intended loss. And notably, upon questioning by the Court at the May Hearing, defense counsel would not deny that Hargrave received at least $1.5 million in payments from clients for purported credit repair services. Nevertheless, counsel appeared to suggest that these funds may not all constitute "actual loss" because, arguably, some services were rendered. Hargrave did not raise this argument in his Motion or Reply and he has presented no evidence in support of it. Nor does he explain why he could not have raised this issue when negotiating his plea prior to the purported change in the law. Indeed, the commentary, as applicable at the time he entered his plea, provides that loss "shall be reduced" by "the fair market value of . . . the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." See U.S. Sent'g Guidelines Manual §2B1.1, cmt. n.3(E)(i). Regardless, for the reasons set forth below, Hargrave's desire to take advantage of a subsequent change in the law concerning his potential sentence does not constitute a fair and just reason to allow him to withdraw his plea.

[5] The Court also expresses significant skepticism at the factual underpinnings of this argument. As support for this contention, Hargrave attaches an email in which the prosecutor in this case states his view that "the fraud losses calculated during prior litigation

emphasized that the amount of loss to consumers was the central issue during plea negotiations and appears to maintain that the Court should permit Hargrave to withdraw his plea so that he can negotiate a more favorable loss amount based on the purported change in the law. At no point does Hargrave assert that he is actually innocent of the charge.

In its Response, the government asserts that this case is about actual loss not intended loss such that the purported change in the law is irrelevant. See Response at 1-2, 10. The government then reviews the Buckles[6] factors and argues that all factors weigh against allowing Hargrave to withdraw his plea. See id. at 12-16. It maintains that allowing Hargrave to withdraw his plea will prejudice the government because, among other things, it will force the government to "reopen its investigation of the defendant and build a case for indictment and a witness-heavy, complex fraud trial." Id. at 14. Likewise, the government asserts that if Hargrave withdraws his plea he will likely be

---

with the Federal Trade Commission [FTC] arise from a common scheme or plan and thus are relevant conduct for sentencing purposes. That would bring the total fraud losses over $9.5mm." See Reply, Ex. B at 2. As discussed at the May Hearing, having presided over the prior litigation, the Court is familiar with the FTC matter and well aware that the losses at issue in that case were predominately, if not entirely, actual losses. See Federal Trade Comm'n v. Latrese & Kevin Enters. Inc., No. 3:08-cv-1001-J-34JRK, 2012 WL 12952608, at *2, *5 (M.D. Fla. Nov. 19, 2012).

[6] United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988) ("Factors analyzed include (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved, and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." (internal citation omitted)).

exposed to "dozens of new charges," requiring the Court "to preside over that expanded prosecution," from the initial appearance through trial, and if convicted, post-trial proceedings. Id. at 12-13. As to whether his plea was knowing and voluntary, the government argues that Hargrave "never explains how his decision to plead guilty supposedly was based on an understanding of the law concerning intended loss," and maintains that the concept of intended loss is not relevant to this case. Id. at 16. Regardless, the government concludes that Hargrave's failure to accurately anticipate the advisory sentencing range does not provide grounds for withdrawal of his plea. Id.

## III. Applicable Law

Pursuant to Rule 11(d)(2)(B), Federal Rules of Criminal Procedure (Rule(s)), after a district court accepts a defendant's guilty plea, and before sentencing, a defendant may withdraw his guilty plea if he shows a fair and just reason for requesting the withdrawal. See United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006) (per curiam) (quoting Rule 11(d)(2)(B)). While Rule 11(d)(2)(B) is to be liberally construed, a defendant does not have an absolute right to withdraw a guilty plea before sentencing. United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988); United States v. McCarty, 99 F.3d 383, 385 (11th Cir. 1996) (per curiam) (citing id. at 471).[7] Rather, "[t]he decision to

---

[7] In Buckles and McCarty, the Eleventh Circuit interpreted the rule regarding presentence withdrawal of a guilty plea which at the time of the court's application was found in Rule 32(d) and 32(e) respectively. That rule is now found at Rule 11(d). See Rule 11(d)

allow withdrawal is left to the district court's sound discretion." See United States v. Midkiff, 806 F. App'x 678, 680 (11th Cir. 2020) (per curiam) (noting that the district court's decision whether to allow withdrawal of a guilty plea "will be reversed only if its decision is arbitrary or unreasonable," and observing that "[w]e will not find the district court abused its discretion if it conducted an extensive plea colloquy that conforms with Rule 11 . . . prior to accepting a guilty plea") (quoting Buckles, 843 F.2d at 471, and citing Brehm, 442 F.3d at 1298).[8] Additionally, "[t]he good faith, credibility, and weight of a defendant's assertions in support [of a motion to withdraw a guilty plea] are issues for the trial court to decide." See Brehm, 442 F.3d at 1298 (quoting Buckles, 843 F.2d at 472).

A defendant seeking to withdraw a guilty plea that has been accepted by the court has the burden of showing a fair and just reason for the withdrawal. See, e.g., Buckles, 843 F.2d at 471. In determining whether a defendant has

---

(pre-sentence withdrawal of guilty plea) and 11(e) (post-sentence withdrawal of guilty plea). See also 2002 Advisory Committee Notes to Rule 11; U.S. v. Herring, 216 F. App'x 927, n.1 (11th Cir. 2007) (noting that prior to the 1994 Criminal Rule amendments, Rule 32(e) was found at Rule 32(d)). Despite the renumbering, "the Buckles factors and context are still the framework for analyzing a withdrawal motion." See United States v. Edwards, No. 8:17-CR-451-T-36SPF, 2020 WL 6363896, at *3 (M.D. Fla. Oct. 29, 2020) (citing Brehm, 442 F.3d at 1298) (applying the Buckles factors to the application of Rule 11(d)(2)(B)).

[8] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

met his burden, a court considers the totality of the circumstances surrounding entry of the guilty plea, including "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Brehm, 442 F.3d at 1298 (quoting Buckles, 843 F.2d at 472). If the first two factors weigh against the defendant, a court need not "give particular attention" to the final two factors. See United States v. Gonzalez-Mercado, 808 F.2d 796, 801 (11th Cir. 1987); see also United States v. Kirksey, 283 F. App'x 714, 715 (11th Cir. 2008) (per curiam) (citing Gonzalez-Mercado, 808 F.2d at 801).

Additionally, when considering whether a guilty plea was knowing and voluntary, a court must determine that the core concerns of Rule 11 have been met. See United States v. Freixas, 332 F.3d 1314, 1318 (11th Cir. 2003). Specifically, "'(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.'" Id. (quoting United States v. Lejarde–Rada, 319 F.3d 1288, 1289 (11th Cir. 2003) (per curiam) (additional citation omitted)). Notably, "[s]tatements made under oath by a defendant during a plea colloquy receive a strong presumption of truthfulness. . .[c]onsequently, a defendant bears a heavy burden to show that his statements under oath were false." See United States v. Bandzul, 652 F. App'x 860, 861

(11th Cir. 2016) (citing United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994), and United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)). Additionally, "'the timing of [a defendant's] motion to withdraw also deserves . . . consideration.'" Id. at 861 (citing Gonzalez-Mercado, 808 F.2d at 801) (alteration in original). Thus, "'the longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal.'" Brehm, 442 F.3d at 1298 (quoting Buckles, 843 F.2d at 473).

### IV. Discussion

Hargrave's challenge to the validity of his plea is based solely on his contention that his plea was not knowing and voluntary. Significantly, however, Hargrave does not assert that he was coerced into entering the plea in any way, or that he was misadvised about the elements of the offense or the maximum penalties he faced. Indeed, Hargrave does not suggest that the Court failed to conduct a proper Rule 11 inquiry, and the undersigned's review of the Plea Hearing transcript confirms that the core concerns of Rule 11 were met. Instead, Hargrave argues that his plea is rendered unknowing and involuntary based on what he views as a change in the law applicable to his sentencing guidelines. This argument is unavailing.

In Brady v. United States, 397 U.S. 742 (1970), the United States Supreme Court held that "absent misrepresentation or other impermissible

conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." See Brady, 397 U.S. at 757 (internal citation omitted); see also United States v. Sanchez, 269 F.3d 1250, 1285 (11th Cir. 2001) (en banc) abrogated on other grounds by Alleyne v. United States, 570 U.S. 99, 107-08 (2013). Indeed, "[a] guilty plea is not invalid merely because a defendant relied on then-applicable penalties when entering his plea and states that he would not have pled guilty had he known that later judicial decisions would lower the penalties." See United States v. Faircloth, 712 F. App'x 887, 892 (11th Cir. 2017); United States v. Johnson, 182 F. App'x 919, 921 (11th Cir. 2006); United States v. Narcisse, 140 F. App'x 893, 895 (11th Cir. 2005) ("[A] defendant may not rely on a subsequent unanticipated change in the law to void an otherwise valid guilty plea . . . ."). As stated by the Supreme Court in Brady, the Constitution does not require that a defendant

> be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the [government] would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

Brady, 397 U.S. at 757.

Although phrased in different ways, this is the essence of Hargrave's challenge to his plea—that it rested on a calculation of loss as relevant to his potential sentence which in his view has been rendered faulty by a later judicial decision. Although the Court questions whether this purported change in law is relevant to Hargrave's case, regardless, it does not undermine the validity of his plea. Indeed, Hargrave will be sentenced under the guidelines in the manner he expected when he entered his guilty plea. Having failed to show any infirmity with his plea, Hargrave's desire to "take advantage of intervening changes in federal sentencing law" alone is not a fair and just reason to permit withdrawal. See Johnson, 182 F. App'x at 921.[9] In light of the foregoing, the Motion is due to be denied. Accordingly, it is

**ORDERED:**

1. Defendant's Motion to Withdraw Plea Agreement (Doc. 46) is **DENIED**.

---

[9] Because Hargrave has not shown that he lacked the close assistance of counsel, or that his plea was unknowing or involuntary, the Court need not "give particular attention" to the last two Buckles factors. See Kirksey, 283 F. App'x at 715 (quoting Gonzalez-Mercado, 808 F.2d at 801). Nevertheless, those factors also weigh against allowing Hargrave to withdraw his plea.

2. The sentencing in this matter is reset for **Monday, August 14, 2023, at 1:30 p.m.** before the undersigned in Courtroom 10B.

**DONE AND ORDERED** in Jacksonville, Florida this 11th day of July, 2023.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record